**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

LAKISHA HOWELL,

    Plaintiff,  Case No. 1:18-cv-510

v.  Black, J.
    Bowman, M.J.

THE OHIO STATE HIGHWAY PATROL SUBDIVISION, et al.,

    Defendants.

**REPORT AND RECOMMENDATION**

Proceeding pro se, Plaintiff Lakisha Howell initiated this action by filing a complaint on July 25, 2018 that alleged that three Defendants had violated her constitutional rights. Pursuant to local practice, the case was referred to the undersigned for initial review and for a report and recommendation on any dispositive motions. Due to the early dismissal of multiple claims and two Defendants, this case proceeded through discovery on only one claim against Ohio State Trooper Aaron Shade. Defendant Shade has now moved for summary judgment. For the reasons that follow, that motion should be GRANTED and this case should be DISMISSED.

### I. Procedural and Factual Background

Plaintiff Howell's original complaint identified three Defendants: the Ohio State Highway Patrol Subdivision, Aaron M. Shade, and Nick Croswell. Because Plaintiff sought to proceed *in forma pauperis*, the undersigned screened the initial complaint under 28 U.S.C. § 1915(e)(2)(B). In a Report and Recommendation ("R&R") filed on August 8, 2018, the undersigned recommended the dismissal of all claims against two Defendants,

as well as the dismissal of most claims against Defendant Shade, leaving only a single construed claim of malicious prosecution arising under the Fourth Amendment.

On August 21, 2018, Plaintiff filed an amended complaint against Defendant Shade alone, voluntarily dismissing the two Defendants as to whom the undersigned had already recommended dismissal. (Doc. 6). In a Supplemental R&R filed on August 24, 2018, the undersigned rescreened Plaintiff's amended complaint under 28 U.S.C. §1915(e)(2)(B). The undersigned pointed out that despite the Court's determination that only a single, liberally construed claim of malicious prosecution under the Fourth Amendment against Defendant Shade had survived initial screening, Plaintiff's amended complaint did not appear to state any claims of "malicious prosecution." Instead, the amended complaint appeared to reframe Plaintiff's claims as claims for "false imprisonment." After explaining that any such claims would be time-barred for the same reasons that the Court previously had determined Plaintiff's claims for false arrest were time-barred, the undersigned reconsidered whether the amended complaint stated any claim that would survive initial screening:

> Because her amended complaint does not characterize any claim as one for "malicious prosecution" and contains even fewer references to the previously construed Fourth Amendment claim against Defendant Shade, the undersigned finds it an even closer issue as to whether the Court should continue to liberally construe Plaintiff's claim as one for malicious prosecution, rather than taking at face value her own characterization of her claims as "false imprisonment."

(Doc. 7 at 6). However, citing the "interests of justice" and the "extremely low screening bar of 28 U.S.C. § 1915(e)," the undersigned allowed a construed "single claim of malicious prosecution against Defendant Shade" in his individual capacity to proceed. At the same time, the R&R made clear that the determination was without prejudice to the

2

Defendant's subsequent right to move for dismissal based upon any appropriate motion. (*Id.* at 6-7).

Thereafter, the Court conducted a telephonic scheduling conference. After that conference, the Court directed the parties to file any motions to further amend their pleadings on or before December 14, 2018, to complete discovery by May 30, 2019, and to file any dispositive motions by June 28, 2019. Two days prior to the deadline for filing any motion to amend her complaint, Plaintiff filed a second amended complaint *without* an accompanying motion or leave of Court. Despite that procedural irregularity, Defendant Shade filed an Answer to the second amended complaint on December 27, 2018.[1]

Following the conclusion of the discovery period,[2] Defendant Shade timely moved for summary judgment. Plaintiff filed a response to that motion, to which Defendant has filed a reply.

## II. Standard of Review

In a motion for summary judgment, a court must view "the facts and any inferences that can be drawn from those facts…in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks and citation omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P.

---

[1]Because Defendant Shade filed an answer and discovery already had commenced, the second amended complaint was not re-screened by this Court under 28 U.S.C. § 1915(e).
[2]The extent to which the parties engaged in discovery remains unclear; the record does not contain any notices of depositions.

56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment - rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's unsupported allegations. If a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). Although reasonable inferences must be drawn in favor of the opposing party, *see Matsushita*, 475 U.S. at 587, inferences are not to be drawn out of thin air. To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.*, 475 U.S. at 586-587 (citation omitted).

To the extent that the Defendant has shown that Plaintiff lacks evidence on an essential element of any of her claims, the burden shifts to Plaintiff to set forth "specific facts showing that there is a genuine issue for trial." *Id.*, at 587. At this point, Plaintiff may not rely solely on her subjective beliefs or opinions. *Arendale v. City of Memphis*, 519

F.3d 587, 601 (6th Cir. 2008). She may not show only that some hypothetical doubt exists as to the facts. *See Matsushita*, 475 U.S. at 586. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

Plaintiff's response in opposition to summary judgment includes references to a transcript and orders from her underlying state criminal prosecution, as well as investigatory documents relating to two OVI charges. (Doc. 26-1). None of the referenced documents contradict the legal arguments presented by the Defendant or suggest that any genuine issue of material fact remains in dispute. Therefore, the Defendant is entitled to judgment as a matter of law.

### III. Undisputed Facts

Defendant Shade has attached an affidavit as an exhibit in support of his motion. He also relies on the docket sheet from related state court criminal proceedings and the Ohio Court of Appeals decision in Plaintiff's underlying state court case. As stated, Plaintiff's response in opposition includes additional state court records, as well as documents that relate to the OVI investigation and Plaintiff's subsequent arrest. Both parties' exhibits have been considered in setting forth the following undisputed facts.

On August 6, 2014, at approximately 2:33 a.m., Trooper Shade was on patrol traveling westbound on Interstate 275. Howell's vehicle approached him from behind with its high beam headlights engaged. Defendant Shade observed Howell's vehicle swerving slightly within its own lane but did not observe any lane violations. Defendant slowed his vehicle so that Howell could pass him, but Howell instead reduced her speed to stay

5

behind him. Defendant then pulled over to allow Howell to pass, and returned to the interstate following behind her.

Defendant was suspicious of Howell based on his observation of her driving, the time of night, her reluctance to pass him and her use of her high beam headlights. Erroneously believing that Plaintiff's use of her high beams behind him was a violation of Ohio Revised Code Section 4513.15, Defendant Shade activated his cruiser's overhead lights and initiated a non-investigatory traffic stop based upon the perceived violation.

Howell pulled over into a parking lot. While speaking to her, Defendant Shade detected a strong odor of alcohol from inside the vehicle, and asked Howell where she was coming from and how much she had had to drink. Howell responded that she was coming from "down the street" and had had a margarita. Defendant Shade asked her to exit her vehicle to administer sobriety tests, and Plaintiff complied.

Defendant administered several field sobriety tests, beginning with the Horizontal Gaze Nystagmus test. During each test, he observed clues that suggested impairment. He also continued to detect a strong odor of alcohol and noticed that Howell's eyes looked glassy. Defendant asked her to perform the walk and turn test, and had her perform the one leg stand test, during which she put her foot down after only 20 seconds. After Howell completed the field sobriety tests, Defendant again inquired how much she had had to drink, and she admitted she had consumed "a margarita and a beer." Based upon his perception that Howell was impaired, Defendant arrested Howell and drove her to the Colerain Ohio Police Department substation where she submitted to a breath test. According to the BAC Datamaster used for that test, her blood alcohol contest was 0.118, which exceeded the limit for impairment under Ohio law. Defendant cited Plaintiff under

Ohio Revised Code Sections 4511.19(A)(1)(a) (OVI impaired) and 4511.19(A)(1)(d) (OVI per se), as well as for failing to dim her high beams in violation of Ohio Rev. Code 4513.15.

On August 11, 2014, Howell was formally charged in state court with the same violations for which she had been cited. Howell filed a motion to suppress to challenge the traffic stop, the administration of field sobriety tests, and her subsequent arrest. At a hearing on the motion to suppress, Defendant testified about the basis for the initial traffic stop as well as for the subsequent field sobriety tests. The trial court initially denied the motion to suppress, concluding that Trooper Shade had probable cause to pull Howell over for a violation of the high-beams statute. Howell later pleaded no contest to, and was found guilty of, the OVI impaired charge; the other two charges were simultaneously dismissed.

Following her conviction, Howell appealed the denial of her motion to suppress, arguing that the initial traffic stop had been unlawful. In a split panel decision, the Ohio Court of Appeals agreed, concluding that Defendant Shade had lacked probable cause to stop Howell's vehicle because he clearly misapplied the high beam statute. Specifically, the appellate court found that the referenced statute only prohibits a driver from employing high beams in the face of <u>oncoming</u> traffic - while another driver is approaching. By contrast, Shade had testified only that Howell had deployed her high beams while behind him; the record was silent as to whether she had used her high beams in the face of oncoming traffic. Because the language of the statute was clear, the appellate court held that Trooper Shade's mistake of law could not provide probable cause for the initial stop. Because Trooper Shade also had testified that he did not observe any lane violations and the trial court had determined that the initial stop was not

an "investigatory stop" but was solely based on the violation of the high beam statute, the appellate court held that all evidence that followed that stop (including all evidence of Howell's impaired driving) should have been suppressed. Without that evidence on remand, the prosecutor dismissed the OVI charge to which Howell had pleaded no contest.

Approximately five months later, Howell initiated this federal lawsuit. Construing Plaintiff's pro se pleading liberally, the undersigned concluded that she was alleging that Defendant Shade had engaged in malicious prosecution. Despite the fact that a first amended complaint presented "an even closer issue" as to whether Plaintiff had stated any claim, the undersigned permitted the case to proceed. Plaintiff filed a second amended complaint (without leave of Court) on December 12, 2018. Assuming that the second amended complaint is considered,[3] Plaintiff's latest iteration does not substantially differ from earlier versions of her complaint. Although the second amended complaint attempts to articulate a "Count One," "Count Two" and "Count Three," virtually all of her claims are conclusory and previously have been dismissed by this Court on initial screening for failure to state any claim.

Plaintiff's response in opposition to summary judgment discusses some of these previously dismissed claims. Based upon Plaintiff's apparent attempt to resurrect those claims, Defendant Shade's reply memorandum formally objects to the inclusion of any claims other than the claim of malicious prosecution, both under the "law of the case" doctrine and on the merits. The undersigned agrees, and notes that the second amended

---

[3] Technically, the second amended complaint could be stricken because it was filed without leave of this Court. However, the Defendant filed an answer without objecting to its filing. As an amendment to the earlier pleading, the second amended complaint fully supersedes the first amended complaint.

complaint was filed in violation of this Court's scheduling Order, as well as procedural rules, that expressly require a motion for leave of court to accompany any amended pleading. To the extent necessary, the undersigned incorporates this Court's prior analysis of Plaintiff's improper claims. In other words, the undersigned construes the second amended complaint as failing to state any viable claim other than a single construed claim of malicious prosecution against Defendant Shade in his individual capacity.[4] Any expansion of claims in the second amended complaint is both procedurally improper and would fail as a matter of law on the merits.

### IV. Analysis of Defendant's Motion for Summary Judgment

### A. The Purpose of Qualified Immunity

The purpose of qualified immunity is to provide governmental officials with the ability to reasonably "anticipate when their conduct may give rise to liability for damages." *See Anderson v. Creighton*, 483 U.S. 635, 646 (1987) (internal quotation omitted). Thus, a governmental official performing discretionary functions will be entitled to qualified immunity unless his or her actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A governmental official is entitled to immunity if the facts alleged do not make out a violation of a constitutional right, or if the alleged constitutional right was not clearly established at the time of the defendant's alleged misconduct. *See generally Pearson v. Callahan*, 555 U.S. 223 (2009). Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). The

---

[4] The Defendant also has construed the second amended complaint as asserting a single claim of malicious prosecution.

doctrine is intended to balance the following competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231.

When a defendant moves for summary judgment based on qualified immunity, the official must first show that he acted within discretionary authority. *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). Once an official makes this showing, the burden shifts to the plaintiff to prove that the officer violated a right so clearly established that any reasonable official in that position would have understood it was unreasonable to engage in the conduct that violated the right. *Id.* Qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)); *see also Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008). Qualified immunity applies regardless of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson*, 555 U.S. at 231.

**B. Plaintiff's Failure to Show Malicious Prosecution by Defendant Shade**

Defendant Shade persuasively argues that he is entitled to qualified immunity because Plaintiff cannot show that he engaged in malicious prosecution in violation of the Fourth Amendment. To prevail on a malicious prosecution claim under § 1983, when the claim is premised a Fourth Amendment violation, a plaintiff must prove: (1) a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the

criminal prosecution; (3) as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty under the Fourth Amendment, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (citing *Wallace v. Kato*, 549 U.S. 384, 390 (2007)).

Plaintiff arguably fails to show three out of the four elements. First, Shade argues that Plaintiff cannot show that Shade "made, influenced, or participated in the decision to prosecute." Although it is undisputed that Shade cited Plaintiff for three offenses, the issuance of a citation, standing alone, is not sufficient. Instead, to be liable for "participating" in a decision to prosecute, the police officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating." *Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015). Thus, "to establish that a testifying officer was responsible for commencing a criminal proceeding for purposes of a malicious-prosecution claim, a plaintiff is "required to present evidence that [the officer] '(1) stated a deliberate falsehood or showed reckless disregard for the truth [at the hearing] and (2) that the allegedly false or omitted information was material to the [court's] finding of probable cause.'" *Sykes*, 625 F.3d at 312 (internal citations omitted).

"A police officer violates a suspect's clearly established right to freedom from malicious prosecution under the Fourth Amendment 'only when his deliberate or reckless falsehoods result in arrest and prosecution without probable cause.'" *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015) (quoting *Newman v. Township of Hamburg,* 773 F.3d 769, 772 (6th Cir.2014)). Although subjective intent equivalent to actual malice is not required, "a defendant's participation must be marked by some kind of blameworthiness, something beyond mere negligence or innocent mistake, to satisfy the elements of a

11

malicious prosecution claim under the Fourth Amendment." *Id.* "The requisite blameworthiness" involves actions such as testimony in which an officer makes "false statements" or "flagrant misrepresentations," or otherwise fails "to disclose key items of evidence." *Johnson*, 790 F.3d at 655. In contrast to that type of conduct, "[t]ruthful participation in the prosecution decision is not actionable," and "[a]llegations of negligence or innocent mistake are insufficient." *Id.* (internal quotation marks and citation omitted).

Here, there is no dispute that the Defendant did not engage in any false statements, flagrant misrepresentations, or failure to disclose evidence. The record reflects that Plaintiff cannot establish that Trooper Shade "participated" in her prosecution in any manner but a passive or neutral way. In her response in opposition to Defendant's motion, Plaintiff asserts that the Defendant "[l]ied under oath" during her state court case, (Doc. 26 at 2), but that conclusory assertion without citation to the record is insufficient to create any genuine issue of material fact in the face of the overwhelming contrary evidence. Defendant's affidavit and all state court records (including the transcript submitted by Plaintiff herself) reflect that the Defendant Shade testified honestly at trial about the reasons for the initial traffic stop and the evidence that led him to charge Plaintiff for OVI offenses, including the single charge on which she initially was convicted.[5]

It is true that, based upon that same record evidence, the Ohio Court of Appeals determined that there was no probable cause for the initial stop for a high-beams traffic violation, resulting in the subsequent exclusion of all evidence supporting the OVI

---

[5] Notably, Plaintiff's second amended complaint also alleges that Defendant testified truthfully and "never stated there was oncoming traffic triggering the plaintiff['s] duty to dim her headlights and alleges that the Defendant is liable because he was "mistaken of the law." (Doc. 22 at 1-2). *See also id.* at 3 (alleging that the Defendant's "good faith belief that the plaintiff committed a violation was a mistake of law and insufficient basis to allow a stop.")

12

conviction. However, the state court reversed the trial court's denial of Howell's motion to suppress because it found that Trooper Shade misapplied the high beams statute as a matter of law, and not because his testimony was fabricated, false, or untruthful. Because of the application of the exclusionary rule, the state court never considered the additional evidence that led Defendant Shade to charge Plaintiff with OVI.

In addition to showing that Defendant Shade "participated" in her criminal prosecution in a manner that would give rise to liability under the Fourth Amendment, Plaintiff also must show that Defendant Shade lacked probable cause to charge her on the OVI charge on which she was convicted. Defendant argues persuasively that based on the uncontested record, Defendant would have had probable cause with which to charge Plaintiff with OVI, but for the exclusion of the relevant evidence under the "fruit of the poisonous tree" doctrine. Critically, for purposes of the pending motion for summary judgment, the fact that the OVI evidence was excluded by the state court during criminal proceedings does not prohibit this Court from determining that the prosecution was supported by probable cause in this entirely separate civil proceeding. *See e.g., Townes v. City of New York*, 176 F.3d 138 (2d Cir. 1999) (holding fruit of the poisonous tree doctrine inapplicable to civil rights claim sunder 42 U.S.C. § 1983). Although the Sixth Circuit has yet to address the issue in a published decision, both this Court and other courts within the Sixth Circuit have reached the same conclusion as the Second Circuit. *See, e.g., Cobb v. City of Columbus*, 2000 WL 1621091, 2000 U.S. Dist. LEXIS 22065 at **13-15 (S.D. Ohio Oct. 20, 2000); *Davis v. Baker*, 2019 WL 6112837, at *7 (E.D. Ky., Nov. 18, 2019); *Martin v. Coyt*, 2012 U.S. Dist. LEXIS 61997 (W.D. Ky. May 3, 2012); *Phelps v. City of Akron*, 2006 U.S. Dist. LEXIS 74539 (N.D. Ohio Oct. 13, 2006);

*Shakelford v. Hensley*, 2013 WL 5371996 at **5-7, 2013 U.S. Dist. LEXIS 136183 at **22-24 (E.D. Ky. Sept. 24, 2013) (dismissing malicious prosecution claim because evidence supporting probable cause for charged offense cannot be excluded under the fruit of the poisonous tree doctrine in a civil action).

The state court did conclude that Trooper Shade lacked probable cause for the initial stop on the high-beams violation. Thus, Plaintiff can prove a lack of probable cause as to the high-beams charge alone, which charge was dismissed contemporaneously with Plaintiff's no contest plea.[6] However, the fact that no probable cause existed for the high-beams charge does not equate to a lack of probable cause on the two OVI charges. And even as to the high-beams charge for which probable cause was lacking, there is no dispute that the Defendant did not "participate" in any meaningful way in Plaintiff's prosecution that would give rise to his liability for malicious prosecution, but instead provided truthful testimony.

Returning to the OVI charges, the undersigned concludes that probable cause existed. Probable cause for an OVI charge exists under Ohio law when "at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." *State v. Homan*, 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (2000) (superseded by statute on other grounds as stated in *State v. Boczar*, 113 Ohio St.3d 148, 150-151 (Ohio 2007)). The record here contained multiple indications, based upon Defendant's administration of field sobriety tests, that Plaintiff was impaired by alcohol at the time Defendant pulled her over. In her response in

---

[6] A second OVI charge was also dismissed contemporaneously with the entry of the no contest plea.

opposition to summary judgment, Plaintiff has provided a partial copy of the Impaired Driver Report that summarizes the field sobriety tests. (Doc. 26-1 at 8, PageID 155; *see also* Doc. 24-1 at 8-9, PageID 126-127). In addition, a breathalyzer administered at the police station recorded a blood alcohol level of 0.118, in excess of the legal limit. The OVI charge on which Plaintiff was convicted requires only a showing that a person operating a vehicle "at the time of the operation…is under the influence of alcohol, a drug of abuse, or a combination of them." Ohio courts have consistently found probable cause to exist based on similar observations from the arresting officer as were made by Defendant Shade in this case. *See, e.g., State v. Henry*, 191 Ohio App.3d 151, 160, 945 N.E.2d 544 (2010).

Finally, Plaintiff's malicious prosecution claim fails as a matter of law because she cannot show a third element of her claim: a sufficient deprivation of her liberty. After Shade determined that Howell was too intoxicated to operate her vehicle safely, he transported her to a local police substation, where she was administered a breath test and released her to a friend. At no time does Plaintiff allege that she was detained beyond her initial arrest. Courts have held that an initial arrest and related detention are legally insufficient to satisfy the deprivation of liberty element of a malicious prosecution claim. *See Billock v. Kuivila*, 2013 WL 591988, at *6, 2013 U.S. Dist. LEXIS 20388 at **17-18 (N.D. Ohio Feb. 14, 2013) (collecting cases); *Kinlin v. Kline*, 2012 U.S. Dist. LEXIS 124098 at *15 (N.D. Ohio Aug. 30, 2012).

### C. Plaintiff's Failure to Show the Violation of a Clearly Established Law

If Plaintiff had come forward with evidence to show the requisite elements of a malicious prosecution claim, Defendant Shade maintains that he still would be entitled to

qualified immunity because he did not violate any "clearly established" law. The undersigned agrees. Even if a reviewing court were to disagree with the above analysis and conclude that Plaintiff has come forward with sufficient evidence to create a genuine issue of material fact on the malicious prosecution claim, the undersigned still would recommend granting qualified immunity to the Defendant. Plaintiff's response in opposition to summary judgment contains no citation to controlling authority that would support her claim on the facts presented, and the undersigned as located none. In short, no "clearly established" law or binding precedent would have informed the Defendant that his traffic stop and issuance of citations, or his truthful testimony at Plaintiff's criminal trial, violated any constitutional right.

### V. Conclusion and Recommendation

Accordingly, **IT IS RECOMMENDED THAT** Defendant's motion for summary judgment (Doc. 24) be **GRANTED**, that judgment be entered in favor of the Defendant, and that this case be **DISMISSED**.

    *s/ Stephanie K. Bowman*
    Stephanie K. Bowman
    United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

LAKISHA HOWELL,

    Plaintiff,                                                             Case No. 1:18-cv-510

    v.                                                                          Black, J.
                                                                             Bowman, M.J.

THE OHIO STATE HIGHWAY PATROL SUBDIVISION, et al.,

    Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).